**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES,**

                        **v.**                                            **1:07-CR-15**
                                                              **(FJS)**

**SEAN TORRES; LUCIEN BATISTE**
**a/k/a Sticks; and JERMAINE**
**MINGO a/k/a V.I.P.,**

                                **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**OFFICE OF THE UNITED**          **TERRENCE M. KELLY, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924
Attorneys for United States

**OFFICES OF DAVID L. GRUENBERG**    **DAVID L. GRUENBERG, ESQ.**
54 Second Street
Troy, New York 12180
Attorneys for Defendant Sean Torres

**FITZGERALD MORRIS**                **LAWRENCE ELMEN, ESQ.**
**BAKER FIRTH P.C.**
One Broad Street Plaza
P.O. Box 2017
Glens Falls, New York 12801
Attorneys for Defendant Lucien Batiste

**OFFICES OF RICHARD L. MOTT**       **RICHARD L. MOTT, ESQ.**
600 Broadway
Albany, New York 12207
Attorneys for Defendant Jermaine Mingo

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court are Defendants Torres', Batiste's and Mingo's motions for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and Defendants Batiste's and Mingo's motions for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

**II. BACKGROUND**

The Court conducted a six-day jury trial in this matter from June 10, 2008, to June 18, 2008. At the conclusion of the parties' proof, the jury found Defendant Sean Torres guilty of Counts One and Two and Defendants Batiste and Mingo guilty of Count One.

The Government alleged at trial that Defendants were members of a conspiracy to distribute more than five kilograms of cocaine and fifty grams of crack in Latham, New York, from around May 2006 to early 2007. According to the Government, the cocaine and crack distribution operation at issue in this case originated with Omar Astacio and Juan Montalvo, who obtained the drugs in the Bronx and controlled their transportation. Mr. Astacio and Mr. Montalvo's salaried employees transported the drugs from New York City to Latham.

The Government further claimed that Defendant Torres was a member of the Astacio-Montalvo organization. According to the Government, Defendant Torres and others transported the drugs by way of Amtrak railway to Latham, where other members of the organization distributed them to a group of re-distributors in the Latham area. Among the group of re-distributors, the Government claimed, were Defendants Batiste and Mingo.

## III. DISCUSSION

**A.    Standards of review**

### *1. Judgment of acquittal*

Rule 29 of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In deciding a defendant's motion for a judgment of acquittal, the court must determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (quotation omitted). This requires the court to consider the evidence in its entirety, not piecemeal. *See United States v. Cassese*, 428 F.3d 92, 98-99 (2d Cir. 2005) (citation omitted). Since the Court reserved decision on Defendants' Rule 29 motions at the conclusion of the Government's case, the Court must evaluate the evidence as of that moment.[1] *See* Fed. R. Crim. P. 29(b).

### *2. New trial*

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Only in exceptional circumstances may a court set aside a jury verdict; for instance, where testimony is "patently incredible or defies physical realities . . . ." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (citations omitted). "Generally, the trial court has broader

---

[1] Defendants did not present any evidence after the close of the Government's case.

discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Sacco*, No. 08-CR-77, 2008 WL 2915430, *1 (N.D.N.Y. July 24, 2008) (quoting *Sanchez*, 969 F.2d at 1414).


**B.      The Superseding Indictment**

In Count One, the Government charged all Defendants with conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base (crack) in violation of 21 U.S.C. § 846.  "The only elements of a section 846 narcotics conspiracy offense are the existence of a conspiracy and the defendant's willful joining it." *United States v.  Story*, 891 F.2d 988, 992 (2d Cir.  1989) (citation omitted).  For purposes of these motions, Defendants do not challenge the existence of the charged conspiracy.  Rather, they argue that they did not willfully join that conspiracy.  Willfulness requires "proof of a specific intent to join the conspiracy with knowledge of its illegal purposes." *United States v.  Acosta*, 470 F.3d 132, 136-37 (2d Cir. 2006) (citations omitted).

In Count Two, the Government charged Defendant Sean Torres with possession with intent to distribute cocaine and cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1).  Where a defendant did not actually possess the drugs at issue, he may still have had constructive possession if he had "'the power and intention to exercise dominion and control over'" them. *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir.  2004) (quotation omitted).  Mere proximity to drugs, however, is not sufficient.  *See id.* (quotation omitted).

-4-

C.      **Defendant Torres' motion for a judgment of acquittal**

Defendant Torres argues that the evidence is insufficient to convict him of either conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base or possession with intent to distribute cocaine and cocaine base.  He contends that the evidence establishes only that he was a one-time courier for the drug conspiracy.  He additionally claims that he did not directly possess the drugs that the police found when they stopped a van outside the Rensselaer Amtrak station and that the Government's evidence concerning dominion and control is "quite thin."

Defendant Torres' argument that the evidence that he acted as a one-time courier for the drug distribution organization is insufficient to establish that he was a member of the conspiracy is meritless.  The drug courier is an essential part of a drug distribution conspiracy.  As the court stated in *United States v. Sanchez*, 925 F. Supp. 1004, 1010-14 (S.D.N.Y. 1996), albeit in a different context, "[a] typical conspiracy involves a supplier, a courier, a middleman and a buyer. . . . The courier . . . ranks high on the culpability scale because he or she carried drugs from place to place . . . ." *Id.* at 1013.  Additionally, the crime of conspiracy to possess or distribute drugs does not require more than one act.  Indeed, it does not require any overt act at all. *See United States v. Shabani*, 513 U.S. 10, 17 (1994).  It merely requires knowledge of the conspiracy's objective and the intent to join.  The intercepted conversations in which Defendant Torres agreed to transport the drugs and discussed what mode of transportation he would use, as well as Mr. Astacio's testimony that he gave Defendant Torres 700 grams of crack and 300 grams of cocaine in a see-through bag to transport to Latham, are sufficient for a rational trier of fact to conclude that Defendant Torres had the requisite knowledge of the conspiracy's illegal purposes and intent

to join the conspiracy.

Moreover, the Court rejects Defendant Torres' argument that the Government presented insufficient evidence of dominion and control over the drugs. New York State Police investigators testified that they observed Defendant Torres at the Rennselaer train station and that he entered a blue van. The Government also introduced an intercepted telephone conversation in which Mr. Astacio instructed Defendant Torres to call Joey Corretjer, an employee of the organization, to pick him up at the train station. Finally, the Government introduced evidence that the state police found Defendant Torres in the back seat of the van when they stopped it. They later found drugs hidden in a compartment in the front of the van. Although the mere presence near contraband is insufficient to show constructive possession, *see Rodriguez*, 392 F.3d at 548, the Government presented evidence that Defendant Torres was aware of the nature and amount of drugs, discussed with Mr. Gordon the need for a hidden compartment to transport the drugs, carried the drugs on the train and to the van, and conveyed instructions from Mr. Astacio concerning the drugs' final destination. Accordingly, for all these reasons, the Court denies Defendant Torres' motion for a judgment of acquittal.

**D.     Defendant Batiste's motion for a judgment of acquittal or for a new trial**

Defendant Batiste contends that the evidence is insufficient to convict him of conspiracy under § 846. First, he argues that the Government did not provide any evidence that he actually received drugs from a member of the conspiracy. Second, he asserts that, even if he did purchase drugs from a member of the conspiracy, his status as a buyer does not make him a co-conspirator. Finally, he claims that no rational trier of fact could conclude that the conspiracy involved more

than fifty grams of crack and more than 500 grams of cocaine.

Although a mere buyer-seller relationship, without more, is insufficient to establish conspiracy, the Government's evidence shows that Defendant Batiste was not merely a buyer. The buyer-seller rule only applies where the parties engage in "a casual sale of small quantities of drugs," not where "there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use." *United States v. Medina*, 944 F.2d 60, 65 (2d Cir. 1991).

The Government introduced evidence that Defendant Batiste, Mr. Astacio, and Mr. Gordon engaged in significant advanced planning. Mr. Astacio testified that Defendant Batiste first met with him and Mr. Gordon to establish prices for the drugs. At their second meeting, Mr. Astacio testified that Mr. Gordon sold Defendant Batiste an ounce of crack. The Government also introduced a number of intercepted calls in which Defendant Batiste ordered drugs from the organization and sometimes altered his orders. In one call, the parties discussed a meeting place for delivery of the drugs. The phone calls showed that, on different occasions, Defendant Batiste ordered cocaine and crack from four different members of the organization – Jason Torres, Charles Nix, Morris Alvarez, and Joey Corretjer.

Additionally, a rational trier of fact could conclude that the quantities of drugs that Defendant Batiste ordered were not minute and, therefore, were not intended for personal use. The intercepted phone calls showed that Defendant Batiste once ordered twenty-eight grams of crack and, on a different occasion, ordered twenty-eight grams of cocaine. In one phone call, the Government alleged that Defendant Batiste ordered drugs and stated that his buyer just called him and "needs it in a rush." Since there is sufficient evidence of advanced planning and

redistribution, the buyer-seller rule does not apply in this case. Rather, a rational trier of fact could conclude that Defendant Batiste knew about the charged conspiracy and intended to further its objectives.

With respect to the drug quantity, the Court finds that the evidence is sufficient to convict Defendant Batiste of conspiracy to distribute and possess with intent to distribute more than fifty grams of crack and more than 500 grams of cocaine. The evidence, viewed in the light most favorable to the Government, showed that Defendant Batiste ordered 126 grams of crack and 112 grams of cocaine. Although this amount of cocaine is less than 500 grams, a conspirator is liable for the amount of drugs that he could reasonably have foreseen that the conspiracy involved. *See United States v. Pico*, 2 F.3d 472, 475 (2d Cir. 1993). The Government introduced evidence that Defendant Batiste ordered drugs from four different members of the organization and knew that the organization had dedicated phone lines for drug sales. A reasonable trier of fact could conclude, based on Defendant Batiste's repeated orders and his knowledge of the relative sophistication of the organization and the number of sellers involved, that Defendant Batiste could reasonably have foreseen that the conspiracy involved more than fifty grams of crack and more than 500 grams of cocaine. Since the evidence is sufficient to support a conviction of conspiracy to distribute and to possess with intent to distribute more than fifty grams of crack and more than 500 grams of cocaine, and because Defendant Batiste has not demonstrated any exceptional circumstances, the Court denies his motion for a judgment of acquittal or for a new trial.

**E.    Defendant Mingo's motion for a judgment of acquittal or for a new trial**

Defendant Mingo contends that the evidence is insufficient to convict him of conspiracy under § 846.  He argues that, although there may have been a drug distribution conspiracy, the evidence does not establish that he was a member of that conspiracy.  Specifically, he claims that the intercepted phone conversation is not sufficient to establish that he was a conspirator because his use of an alias showed that he did not know the conspirators and that his relationship with the organization was that of a mere buyer.  Furthermore, Defendant Mingo asserts that the transaction discussed on the phone was never consummated.  Finally, he argues that the Court should set aside the verdict and order a new trial because Mr. Gordon's testimony against him was patently incredible.

At the outset, the Court notes that it is clear that Mr. Gordon's testimony was neither perjurious nor patently incredible.  On direct examination, he testified that, between June 2006 and January 2007, he sold about fifty to one hundred grams of crack and as much as 200 to 250 grams of cocaine to Defendant Mingo.  On cross-examination, he testified that he personally sold drugs to Defendant Mingo in the summer of 2006 and was present when another member of the organization sold drugs to Defendant Mingo in the winter of 2006.  He also testified that he could not remember the quantity that he sold to Defendant Mingo in the summer of 2006.

There is nothing inconsistent about this testimony.  Although Mr. Gordon testified that he could not remember how much he personally sold to Defendant Mingo on one occasion in the summer of 2006, the amounts about which he testified on direct examination apparently pertain to the total amount of drugs that his organization sold to Defendant Mingo between June 2006 and January 2007.  Mr. Gordon testified that some time in 2006 he stopped selling small

-9-

quantities of drugs personally; however, he also testified that other members of the organization made those sales in his stead. Therefore, he testified about two different kinds of transactions with Defendant Mingo; those with which he was personally involved and those with which he was not. Simply because he could not remember the exact quantity involved in the transactions with which he was personally involved does not mean that he could not estimate the amount of drugs that his organization sold to Defendant Mingo over a seven-month period. For all these reasons, the Court concludes that Mr. Gordon's testimony was not patently incredible and denies Defendant Mingo's motion for a new trial on this ground.

The Court also denies Defendant Mingo's motion for a judgment of acquittal on the ground that the evidence is insufficient to support a conviction. As stated, § 846 requires knowledge of the conspiracy and intent to join it. In addition, a defendant may not rely on the buyer-seller defense where he engaged in advanced planning and resale. Mr. Gordon's testimony showed that Defendant Mingo purchased drugs from the organization on a number of occasions, in amounts that a rational trier of fact could conclude were not intended for personal use. The intercepted phone call, in which Defendant Mingo ordered fourteen grams of cocaine and 3.5 grams of crack, also demonstrated knowledge and intent as well as advanced planning and intent to resell.

In that phone call, Defendant Mingo announced himself as "Ambush's man" and "Smoke's peoples, Troy." From this, the jury could reasonably conclude that Defendant Mingo had a business relationship with Mr. Gordon, a.k.a. Smoke, and Shenoll Bruno, a.k.a. Ambush, a larger purchaser of drugs from the organization, and that he intended to use these affiliations to gain credibility or to curry favor with the organization. Defendant Mingo also stated during that

phone conversation that he had "someone on stand-by," apparently referring to a buyer he had lined up.  Mr. Astacio also testified that he saw the name "Viper," Defendant Mingo's alias, on slips of paper denoting customers who owed money to the organization.  He also testified that his co-conspirators told him that "Viper" was Ambush's man.

The Court finds that this evidence is sufficient to show that Defendant Mingo's relationship with the organization was not merely that of a buyer and seller and that he had knowledge of the conspiracy's illegal objective and the intent to further its objective.  Therefore, the Court denies Defendant Mingo's motion for a judgment of acquittal or for a new trial.

## IV. CONCLUSION

Accordingly, for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Torres' motion for a judgment of acquittal is **DENIED**; and the Court further

**ORDERS** that Defendant Batiste's motion for a judgment of acquittal or for a new trial is **DENIED**; and the Court further

**ORDERS** that Defendant Mingo's motion for a judgment of acquittal or for a new trial is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 14, 2008
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge